**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0162n.06
Filed: March 25, 2008

**No. 03-6566**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **On Appeal from the United** |
| Plaintiff-Appellee, | ) | **States District Court for the** |
| | ) | **Western District of Tennessee** |
| v. | ) | |
| | ) | **O P I N I O N** |
| JAYDONTA WASHINGTON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

**BEFORE:  MOORE and GRIFFIN, Circuit Judges; and TARNOW, District Judge.**[*]

**TARNOW, District Judge.**  Pursuant to a guilty plea to the charge of being a felon in possession of a firearm, the district court sentenced defendant Jaydonta Lavar Washington to 15 years' imprisonment, the statutory minimum under the Armed Career Criminal Act, 18 U.S.C. § 924(e).  On appeal, the defendant's appellate counsel filed a motion to withdraw, accompanied by a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967).  The *Anders* brief raises three areas of concern: (1) whether the defendant was properly sentenced as an armed career criminal; (2) whether the defendant was competent to proceed with sentencing; and (3) whether the defendant had proper consultations with trial counsel before pleading guilty.  Because we conclude that none of these issues has merit, we grant counsel's motion to withdraw and affirm the judgment of the district court.

---

[*]Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

**I. Factual and Procedural Background**

On January 23, 2002, a confidential informant working with the Bartlett Police Department Narcotic Division in Bartlett, Tennessee phoned the defendant, Jaydonta Lavar Washington, to arrange a drug buy. (*See* Presentence Investigation Report 5.) Washington agreed to sell the confidential informant one-eighth of a gram of cocaine for $100. (*See id.*) The two made the exchange in person, which the confidential informant recorded by use of a body wire. (*See id.)* The purchased drugs tested positive for cocaine and weighed 1.6 grams. (*See id.*)

The following day, on January 24, 2002, police searched the defendant's home in Memphis, Tennessee pursuant to a search warrant. (*See id.*) The police found Washington smoking marijuana in his bedroom with three other men and arrested him for the drug transaction that occurred the previous day. (*See id.*) Under the mattress of the defendant's bed, police found a .357 caliber pistol, model Sentinel MK III, serial number H11061. (*See id.*) Washington explained that the gun belonged to his sister, and he was merely holding onto it for her. (*See id.*) Also discovered during the search of the defendant's bedroom were eight rounds of .357 caliber ammunition, one round of .38 special caliber ammunition, a set of scales, and a small amount of marijuana. (*See id.*)

On April 10, 2002, a federal grand jury in the Western District of Tennessee returned a two-count indictment. (*See* R.1, Indictment at 1-3.) Count One charged the defendant with being a felon in possession of a firearm, and Count Two charged him with being a felon in possession of ammunition, both in violation of 18 U.S.C. § 922(g). (*See id.*) Washington agreed to enter into a plea agreement with the government; in exchange for a plea of guilty to Count One of the indictment,

the government agreed to drop Count Two. (*See* R.37, Plea Agreement at 1-2; R.39, Or. on Change of Plea at 1.) On August 30, 2002, the defendant pleaded guilty to Count One. (*See* R.36 Minutes Aug. 30, 2002; R.56 Transcript of Change of Plea at 16.) Count Two was dismissed by way of motion at the sentencing hearing. (*See* R.77, Judgment at 1.)

Prior to Washington's sentencing hearing, a probation officer prepared a Presentence Investigation Report (PSIR) detailing Washington's offense conduct, criminal history, and other relevant information. The PSIR listed 23 prior arrests and convictions as well as three pending charges, beginning when he was 16 years old, and noted that three of his prior state convictions qualified as predicate offenses under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). (*See* PSIR at 7-16.) Two of these predicate convictions were for burglaries and the third was for reckless homicide. (*See id.* at 8-9.)

At the sentencing hearing, Washington's total offense level was calculated to be 30, based on an initial offense level of 24, a four-level enhancement for the use of a firearm or ammunition in connection with another felony offense, an enhancement to level 33 for being an armed career criminal under U.S.S.G. § 4B1.4(b)(3)(B), and a three-level reduction for acceptance of responsibility. (*See id.* at 6; Transcript Sentencing Hearing, Nov. 19, 2003 at 5-8.) This calculation, together with the defendant's criminal history category of VI, resulted in a Guidelines range of 168 to 210 months' (14 to 17 ½ years') imprisonment. (*See* PSIR at 14; Transcript Sentencing Hearing, Nov. 19, 2003 at 8.) Because the plea agreement indicated that "the United States and the defendant agree that the defendant will be sentenced to a term of imprisonment of fifteen years or the low end of the applicable sentencing guideline range, whichever is higher" (R. 37, Plea Agreement at 2, ¶ 5),

the district court sentenced Washington to a term of 180 months' imprisonment followed by five years of supervised release. (*See* Transcript Sentencing Hearing, Nov. 19, 2003 at 11-12.)

This timely appeal followed. On October 4, 2004, Washington's original appellate counsel filed a motion to withdraw with an accompanying brief concluding that no relief is warranted in accordance with *Anders v. California*, 386 U.S. 738 (1967). That motion to withdraw was granted on June 20, 2006. The court appointed replacement counsel, who entered his appearance on July 5, 2006. On October 6, 2006, Washington's replacement appellate counsel filed a motion to withdraw, accompanied by an *Anders* brief.

## II. Discussion

### A. Armed Career Criminal Status

The first issue identified by Washington's appellate counsel is whether the defendant was properly sentenced as an armed career criminal under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). This court reviews *de novo* a district court's determination that a defendant qualifies as an armed career criminal. *See United States v. Sawyers*, 409 F.3d 732, 736 (6th Cir. 2005).

The ACCA provides that an armed career criminal shall be fined and imprisoned for a minimum of 15 years. *See* 18 U.S.C. § 924(e)(1). Under the Act, a person is deemed an armed career criminal if he violates 18 U.S.C. § 922(g) and has three previous convictions for a violent felony, a serious drug offense, or both, provided that these offenses were committed on different occasions. *See id.* The ACCA defines the term "violent felony" as any crime punishable by more

than one year in prison that either includes as an element physical force against the person of another or is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct presenting a serious potential risk of physical injury to another. *See* 18 U.S.C. § 924(e)(2)(B). An act of juvenile delinquency may constitute a "violent felony" if it involves the use or carrying of a firearm, knife, or destructive device and would be punishable for a prison term exceeding one year. *See id.*

The Presentence Investigation Report (PSIR) recommended that Washington be sentenced as an armed career criminal based on three of his previous convictions. (*See* PSIR at 8-9.) Two convictions were for burglaries committed in Cross County, Arkansas, on March 12, 1995 and May 1, 1995; the third was for reckless homicide committed on February 25, 1998 in Memphis, Tennessee. (*See id.*) The district court properly considered these convictions as predicate offenses qualifying Washington for armed-career-criminal status.

"Burglary" is included in the definition of violent felonies that may constitute predicate offenses under the ACCA. *See* 18 U.S.C. § 924(e)(2)(B)(ii). In *Taylor v. United States*, 495 U.S. 575, 599 (1990), the Supreme Court held that "burglary," as used in the ACCA, refers to burglary in the "generic" sense, that is "any crime . . . having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." In 1995, however, Arkansas's criminal code defined burglary more broadly than generic burglary by including places other than buildings, such as vehicles. *See* ARK. CODE ANN. §§ 5-39-101(1), -101(2), -201 (West 1995). As this court explained, the Supreme Court in *Taylor* held that "[a] defendant's past convictions under a non-generic burglary statute may be counted for purposes of § 924(e) if the

conviction was, in essence, for generic burglary." *United States v. Pluta*, 144 F.3d 968, 975 (6th Cir.

1998). Despite the breadth of Arkansas's burglary statute, the PSIR[1] indicates that both of

Washington's burglary convictions were for generic burglary because they involved buildings rather

than vehicles: on March 12th, he burglarized a store, J&D Discount Center, and on May 1st, he stole

speakers from a church. (*See* PSIR at 8.) Washington's two burglary convictions qualify as

predicate offenses under the ACCA because they were for generic burglary, they were punishable

by more than one year in prison, *see* ARK. CODE ANN. §§ 5-39-201, -4-401(a)(3), -4-401(a)(4) (West

1995), they occurred on two different occasions, and Washington was convicted as an adult despite

being only 16 years-old at the time of the offense. (*See* PSIR at 8.)

Washington's third conviction, for reckless homicide in Memphis, Tennessee, qualifies a

predicate offense under the ACCA only if it constitutes a "violent felony." *See* 18 U.S.C.

§ 924(e)(1). Because reckless homicide is not one of the specifically named offenses (burglary,

arson, or extortion) and does not involve the use of explosives, it only qualifies as a predicate offense

if it "has as an element the use, attempted use, or threatened use of physical force against the person

of another; or . . . otherwise involves conduct that presents a serious potential risk of physical injury

to another." 18 U.S.C. § 924(e)(2)(B).

---

[1] Because the PSIR is neither an indictment nor an information, it does not qualify as a valid document to show that the defendant was charged with burglary of a building. *See Taylor*, 495 U.S. at 602. Nonetheless, Washington's trial attorney made no objection to the PSIR, and the *Anders* brief does not even mention that Arkansas's 1995 burglary statute was broader than generic burglary. *See U.S. v. Reliford*, 471 F.3d 913, 916 (8th Cir. 2006) ("if the defendant fails to object to fact statements in the presentence investigation report . . . establishing that a prior offense was a violent felony conviction, the government need not introduce at sentencing the documentary evidence" required by *Taylor*).

The Sixth Circuit takes the categorical approach to determine whether a prior offense constitutes a predicate offense under the ACCA, *see United States v. Montanez*, 442 F.3d 485, 489 (6th Cir. 2006), which means "looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions," *Taylor*, 495 U.S. at 600. Tennessee defines reckless homicide as "a reckless killing of another," and it is punishable by imprisonment for more than one year. TENN. CODE ANN. §§ 39-13-215, 40-35-111(b)(4) (West 1998). Under Tennessee law,

> "Reckless" refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a *substantial and unjustifiable risk* that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

TENN. CODE ANN. § 39-11-106(a)(31) (West 1995) (emphasis added). We conclude that the "substantial and unjustifiable risk" of injury under Tennessee's reckless-homicide law falls within the meaning of a "serious potential risk of physical injury to another" under 18 U.S.C. § 924(e)(2)(B). *See* United States v. Adams, 51 Fed. Appx. 507, 508 (6th Cir. 2002) (unpublished) (Kentucky reckless homicide is predicate offense under ACCA). Washington's 1998 reckless-homicide conviction constitutes a predicate offense under the ACCA.

Recklessness might not be an adequate *mens rea* for a conviction to count as a predicate offense under the ACCA. As explained, the statute offers two subsections to explain what a violent felony is. *See* 18 U.S.C. § 924(e)(2)(B). The first subsection states that a crime that "has as an element the use . . . of physical force against the person of another" counts as a felony. A crime

committed recklessly might not satisfy this first subsection's definition of "violent felony." *See*

*Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1130 (9th Cir. 2006) (citing *Leocal v. Ashcroft*, 125

S.Ct. 377, 383 (2004) (interpreting identical language that defines a "crime of violence" which can

serve as a predicate for deportation of aliens)). However, the language in the second subsection, §

924(e)(2)(B)(ii), is so broad that even a crime of recklessness can come under the umbrella of

"conduct that presents a serious potential risk of physical injury to another." *See U.S. v. McCall*, 439

F.3d 967, 971 (8th Cir. 2006) (noting the Supreme Court's distinction in *Leocal*, 125 S.Ct. at 383

n.7, between these two definitions, and explaining that the "potential risk" definition focuses on the

effect of the conduct, not the intent of the offender).

Therefore, because three of Washington's prior convictions were for violent felonies, the

district court properly sentenced him as an armed career criminal under 18 U.S.C. § 924(e).

**B. Competency**

The second issue raised in the *Anders* brief concerns whether the defendant was competent

to go forward with sentencing. "A defendant's competence is a question of fact, which we review

for clear error." *Harries v. Bell*, 417 F.3d 631, 635 (6th Cir. 2005). To be adjudged competent, a

defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree

of rational understanding" and "a rational as well as factual understanding of the proceedings against

him." *Dusky v. United States*, 362 U.S. 402, 402 (1960).

Before sentencing Washington, the district court granted a defense motion for evaluation as

to his mental competency. (*See* R.63, Or. for Mental Evaluation of Def.) The evaluation was

completed on August 22, 2003, and a second review was performed on October 7, 2003. (*See*

Appellant's Br. 10-11 (citing R.91, Sealed Doc. - Forensic Evaluation R. & Addendum).) According to discussion at the sentencing hearing on October 20, 2003, both reports found not only that Washington was competent to go forward with sentencing but also that he was malingering. (*See* Transcript Sentencing Hearing, Oct. 20, 2003 at 11-12.) Despite these findings, the district court granted defense counsel's request for an independent evaluation, noting:

> [H]e does appear to me to be malingering. And I believe there is strong support for that in the record here and in these reports. However, I also believe I need to give him the benefit of the doubt before I – he is facing a long period of incarceration and I think probably a second opinion is appropriate under all the circumstances.

*Id.* at 25. However, three days after the district court granted the request for further competency evaluation, defense counsel withdrew the motion, explaining only that he "met extensively" with the defendant "and it is now Counsel's representation to this Court that Mr. Washington is competent to proceed to sentencing." (R.73, Mot. to Withdraw Request for Further Competency Evaluation at 1-2.)

Because Washington withdrew his request for further evaluation, he waived any right of appeal as to whether additional evaluation should have been performed. *See United States v. Denkins*, 367 F.3d 537, 544 (6th Cir. 2004) (defendant waived his right to appeal district court's denial of motion to withdraw his plea, where motion asserted lack of competency but defendant subsequently stated that he no longer wanted to pursue incompetency claim); *see also United States v. Sheppard*, 149 F.3d 458, 461 (6th Cir. 1998) (defendant waived suppression argument when he filed motion to suppress evidence but then withdrew the motion).

Although the defendant may not challenge the district court's failure to order additional evaluation, he may appeal the court's competency finding. At the sentencing hearing on October 20, 2003, the district court determined that Washington was competent to go forward with sentencing, concluding "I am absolutely certain that he is capable of understanding the proceedings and assisting his counsel, if he wants to. And it is apparent that he doesn't want to." (Transcript Sentencing Hearing, Oct. 20, 2003 at 14.) In order to overturn the district court's competency finding, we would have to find it clearly erroneous. *See Harries v. Bell*, 417 F.3d at 635.

According to the Supreme Court, "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but . . . even one of these factors standing alone may, in some circumstances, be sufficient." *Drope v. Mo.*, 420 U.S. 162, 180 (1975). The district court relied on these factors to determine Washington's competency to proceed with sentencing, citing the forensic evaluation as well as its own observations of the defendant. Noting the high quality of the forensic evaluation, the court described its reasoning for adopting the evaluators' opinion as its own:

> [V]ery seldom will I read [an evaluation] in which the evaluators have such a clear perception and such a clear opinion about a patient or a person being evaluated. Both the thoroughness and the clarity of their conclusion are very compelling for the Court. And the conclusion is that he is malingering.

(Transcript Sentencing Hearing, Oct. 20, 2003 at 13-14.) In addition, the court found it significant that the evaluators' findings comported with its own observations of the defendant: "In looking at the history of this case, I have had this case for over a year now. Mr. Washington has been in this

court repeatedly.  I have had the opportunity to observe him.  There have been no symptoms of mental illness." (*Id.* at 14.)

Nor is it material that the district court did not hold a hearing as to defendant's competency, pursuant to 18 U.S.C. § 4247(d).  Although such a hearing would have afforded Washington the chance to exercise certain rights, such as the opportunity to testify, or to present evidence, Washington's trial counsel only moved for a psychological evaluation, not a hearing. (*See* R.62, Mot. for psychological and/or psychiatric evaluation).  The district court granted the motion for evaluation, but failing to find "reasonable cause" under § 4241(a) to believe that Washington was incompetent to stand trial, the court did not need to conduct a competency hearing. *See Markham v. U.S.*, 184 F.2d 512, 513 (4th Cir. 1950) (if psychiatric evaluation shows that defendant is competent, not necessary for trial court to hold competency hearing).

Therefore, because the district court relied on proper factors to determine Washington's competency and because the record lacks evidence that the defendant was not competent to go forward with sentencing, the district court's finding was not clearly erroneous.

Although not addressed in the *Anders* brief, Washington's competency to enter his guilty plea was raised early in the proceedings.  After Washington pleaded guilty, he filed a motion to withdraw his guilty plea, claiming that he was unable to make an intelligent, knowing choice due to extreme pain caused by an injury he sustained to his right leg while detained. (*See* R.50, Mot. to Withdraw Guilty Plea at 2-3.)  However, 15 days later, he filed a motion to withdraw the motion to withdraw his guilty plea, explaining only that "[a]fter extensive consultations with counsel, Mr. Washington has decided to proceed with his plea of guilt." (R.51, Mot. to Withdraw Mot. to Withdraw Guilty

Plea at 1.)  Because Washington withdrew his motion, the district court was never called upon to

decide whether to allow him to withdraw his plea on the ground of incompetency and, thus, the

defendant waived any right of appeal on that issue.  *See Denkins*, 367 F.3d at 544; *Sheppard*, 149

F.3d at 461.  Therefore, he may not challenge his competency to enter a plea on appeal, and he would

fail an appeal based on lack of competency to go forward with sentencing.

### C. Proper Consultations with Lawyer

The final issue raised by the *Anders* brief is "whether or not Mr. Jaydonta Lavar Washington

had proper consultations with his attorney in his case."  (Appellant's Br. 7.)  Although appellate

counsel failed to specify the legal significance of this issue, presumably he meant to examine either

whether the defendant's guilty plea was valid or whether trial counsel rendered effective assistance.

Neither, however, has merit.

A guilty plea must be entered knowingly, voluntarily, and intelligently.  *Brady v. United

States*, 397 U.S. 742, 748 (1970).  The only potential impropriety indicated in the *Anders* brief is a

statement included in the defendant's motion to withdraw his guilty plea, which was subsequently

withdrawn, that "Mr. Washington and counsel have never discussed his guilt or innocence in this

matter."  (R.50, Mot. to Withdraw Guilty Plea at 5.)  This statement is irrelevant to the validity of

Washington's plea, however, because the defendant admitted in the written plea agreement as well

as under oath during the change of plea hearing that he had been fully advised of the plea agreement,

that he had ample opportunity to discuss the case with counsel prior to pleading guilty, and that he

was satisfied with counsel's advice and representation. (*See* R.37, Plea Agreement at 1-3; Transcript

of Change of Plea at 4, 6, 11).  Therefore, the defendant has no basis to argue that his plea was not

entered knowingly, voluntarily, and intelligently based on a lack of consultation or improper consultation with his lawyer.

Although the *Anders* brief may have attempted to argue that the defendant was denied effective assistance of counsel prior to entering a guilty plea, claims of ineffective assistance of counsel are better addressed in a habeas corpus motion under 28 U.S.C. § 2255. In general, raising ineffectiveness claims on direct review is appropriate only where "trial counsel's ineffectiveness is so apparent from the record that appellate counsel will consider it advisable to raise the issue on direct appeal." *Massaro v. United States*, 538 U.S. 500, 508 (2003). Here, there is virtually no evidence in the record regarding pre-plea consultations between the defendant and trial counsel. Because "[s]uch facts are more appropriately developed at the district court level," *United States v. Valdez*, 362 F.3d 903, 913 (6th Cir. 2004), the panel need not address ineffective assistance of counsel on direct appeal.

Therefore, there is no viable issue for appeal based on a lack of proper consultation between Washington and trial counsel before the defendant pleaded guilty.

## III. Conclusion

There are no legally non-frivolous issues for consideration on appeal. We GRANT defense counsel's motion to withdraw and AFFIRM the judgment of the district court.