**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0499n.06

No. 08-1810

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Jul 17, 2009**

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,              )
                                       )
    **Plaintiff-Appellee,**              )          **ON APPEAL** FROM THE
                                       )          UNITED STATES DISTRICT
v.                                     )          COURT FOR THE WESTERN
                                       )          DISTRICT OF MICHIGAN
JEROME RAYMOND HETH,                   )
                                       )
    **Defendant-Appellant.**            )          **O P I N I O N**
_____)

**Before: MOORE and ROGERS, Circuit Judges; THAPAR,*** **District Judge.**

    **KAREN NELSON MOORE, Circuit Judge.** Defendant-Appellant Jerome Raymond Heth

was charged in a two-count indictment with being a felon in possession of one or more firearms and

possession of an unregistered firearm. After three competency evaluations and several hearings

before a magistrate judge, Heth was found competent to stand trial and subsequently pleaded guilty

to being a felon in possession of two firearms in violation of 18 U.S.C. § 922(g)(1). On appeal, Heth

argues that (1) the district court erred in finding him competent to enter a guilty plea and (2) Heth's

trial counsel was ineffective both during the competency proceedings and in advising Heth on

entering the guilty plea. For the reasons discussed below, we **AFFIRM** Heth's conviction.

_____

    *The Honorable Amul R. Thapar, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

# I.  BACKGROUND

## A.  Indictment

On January 25, 2007, Jerome Heth was indicted on one count of being a felon in possession of one or more firearms in violation of 18 U.S.C. § 922(g)(1) and one count of possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d).  The indictment stemmed from an incident occurring on November 11, 2006, in which Heth failed to stop for a Michigan State Police officer, led police on a twenty-minute car chase, and then drove onto the property where his two children and their mother were residing.  The chase ended when Heth's vehicle was forced into a ditch by a police car.  When the police searched Heth's vehicle, they discovered a loaded and cocked twelve-gauge sawed-off shotgun and an unloaded twelve-gauge shotgun.

## B.  Competency Proceedings

Heth was arrested on March 13, 2007.  During his first appearance before a magistrate judge, he requested appointed counsel.  Counsel, who was appointed the next day, promptly filed a Notice of Insanity Defense.  On March 16, 2007, when the parties were before the magistrate judge for arraignment, Heth's counsel made an oral motion for an evaluation for both insanity at the time of the offense and competency to stand trial.  The magistrate judge ordered that a competency evaluation be conducted by the Bureau of Prisons ("BOP").

On June 29, 2007, the BOP psychologist, Dr. Ron Nieberding, issued a report concluding that "there was little conclusive evidence to suggest the defendant is not able to proceed with the process of criminal adjudication, at the present time."  6/29/2007 Forensic Report at 11.  Dr. Nieberding diagnosed Heth with "Alcohol Abuse," "Depressive Disorder Not Otherwise Specified," and "Personality Disorder Not Otherwise Specified."  *Id*. at 9.  The report concluded that, although "Heth

does appear to be experiencing symptoms consistent with" these mental conditions, "results of the current evaluation indicated the defendant appeared to maintain a concrete, yet fundamentally accurate factual and rational understanding of his current legal circumstances." *Id*. at 10. The report also noted that Heth's "capacity to assist counsel is less clear" due to the fact that he "is prone to overt suspiciousness," "can be very demanding in his interactions with others," and "may at times be seen as difficult, cantankerous, and oppositional," but Dr. Nieberding concluded that "[t]hese factors do not appear [] to represent an underlying severe mental disorder or defect." *Id*. at 11. Based on Heth's "demonstrated [] ability to cooperate, and engage in productive discussion," the report found that Heth "appears to possess the capacity to assist others, including his attorney, although he may not always choose to do so." *Id*.

Meanwhile, Heth filed two motions for new counsel, alleging, among other things, that his counsel was argumentative and would not provide Heth with his case file. Based in part on difficulties in dealing with Heth, Heth's counsel filed an unopposed motion for an independent forensic competency evaluation. At a competency hearing on July 27, 2007, the magistrate judge inquired about the attorney-client relationship. Heth's counsel stated that the relationship was "tenuous at best," but indicated that he believed new counsel would have the same difficulties because "[w]hen you tell a client what they need to hear rather than what they want to hear, oftentimes they won't hear that." 7/27/2007 Competency Hr'g Tr. at 3-4. Finding that Dr. Nieberding's report "was kind of unclear" as to Heth's competency to assist in his defense, the magistrate judge granted the motion for an independent psychological evaluation and deferred ruling on Heth's motion for new counsel. Heth stated that he did not need another evaluation and merely wanted an attorney who would represent him well. *Id*. at 5.

3

Pursuant to the court's order, an independent psychologist, Dr. Jeffrey Kieliszewski, evaluated Heth both for competency and for insanity at the time of the offense. Dr. Kieliszewski's competency report concluded that Heth was competent to stand trial. Like the previous psychologist, Dr. Kieliszewski diagnosed Heth with "Alcohol Dependence," "Major Depressive Disorder, Recurrent, Mild," and "Personality Disorder [Not Otherwise Specified]." 8/21/2007 Competency Psych. Eval. at 7. Also like the previous report, Dr. Kieliszewski concluded that "it does not appear that he is impaired by his mental disabilities to the point where he would not understand the nature and object of the proceedings, communicate with his attorney in an effective manner, or adequately assist in his defense." *Id*. Although the report noted that Heth "will likely need a somewhat more intense level of education and repeated explanation of concepts as compared to a non-impaired client," Heth was "not impaired to the point where he would not be competent to stand trial" under "the relevant statute." *Id*. at 7-8.

At the next competency hearing, on September 20, 2007, the magistrate judge reviewed the competency evaluation and again asked about the attorney-client relationship. Regarding his relationship with Heth, Heth's counsel stated that "it's better" and noted that they had "had a number of conversations that have been productive" and were "on the [cusp] of settling the case . . . to the benefit of my client." 9/20/2007 Competency Hr'g Tr. at 5. Heth, however, disagreed with this characterization, complaining that his counsel would not file motions that Heth asked him to file. Although the magistrate judge indicated that she would be inclined to grant Heth's motion for new counsel, she did so hesitantly, noting that Heth's counsel was working in Heth's best interest and was on the verge of making a beneficial plea agreement. Because she still questioned Heth's competency, particularly in light of his attempts to dismiss his attorney, the magistrate judge decided

to hear testimony from Dr. Kieliszewski on Heth's competency. Heth again stated that he believed that he was competent to continue with the proceedings.

Dr. Kieliszewski testified at a hearing held on September 25, 2007. Dr. Kieliszewski reiterated the findings in his report and explained that Heth's primary impairment was his personality disorder. He stated, however, that "personality disorders really cannot serve as the basis of a finding of not competent to stand trial." 9/25/2007 Competency Hr'g Tr. at 10. Dr. Kieliszewski did note that Heth had been prescribed Wellbutrin, an antidepressant, and that, if effective, an antidepressant medication could alleviate some of Heth's depressive symptoms, which might make him more cooperative. *Id*. at 13. Dr. Kieliszewski asserted that Heth's "competency is really borderline in my opinion." *Id*. at 18. The magistrate judge then asked Dr. Kieliszewski about her concern that Heth's "cantankerous" personality prevented him from assisting in his defense when his counsel was "leading [him] toward what is a reasonably favorable outcome." *Id*. Dr. Kieliszewski explained that, as "a manifestation of the personality disorder," Heth's cantankerousness was something that Heth had "volitional control over": "So, in other words, this person can choose to not be cantankerous, and they probably have enough will and volition to do that." *Id*. at 19. Because personality disorder "includes a significant degree of volition," Dr. Kieliszewski concluded that it "really wouldn't meet the threshold for" incompetency, which requires "a disease or defect." *Id*. at 19-20.

After Dr. Kieliszewski's testimony, the magistrate judge turned to Heth's request for new counsel. Heth's counsel indicated that their relationship still was difficult but that he believed that Heth would be oppositional regardless of who served as his counsel, and Heth again expressed his dissatisfaction with his counsel. After hearing Heth's argument, the magistrate judge granted Heth's

motion for new counsel but warned Heth that she doubted new counsel would work with him any better than his current counsel. The matter was then adjourned for appointment of new counsel.

New counsel was appointed the next day, and a competency hearing was held on October 5, 2007. At the hearing, the prosecutor requested another evaluation to determine the effect of medication on Heth's competency to stand trial, as Heth had stopped taking previously prescribed antidepressant medication. This final evaluation was conducted by the same BOP psychologist, Dr. Nieberding, who conducted the first evaluation. Dr. Nieberding's report, issued on January 4, 2008, again determined that Heth was competent to stand trial. Regarding medication, the report noted that Heth had been prescribed a different antidepressant, Zoloft, while at the BOP facility, but concluded that, although Heth's "continued medication compliance will help mediate the impact of his depressive symptoms," it "will likely have minimal impact on the more characterological factors that have negatively impacted his interpersonal effectiveness." 1/4/2008 Forensic Report at 11. The report again expressed some concern for Heth's "capacity to assist counsel," but attributed this difficulty to "personality traits" that "do not appear, however, to be representative of an underlying severe mental disorder or defect, and as such are not necessarily amenable to modification though the use of psychotropic medication." *Id*.

At the final competency hearing, held on January 23, 2008, the magistrate judge and counsel for the parties discussed Dr. Nieberding's evaluation. The prosecutor and the magistrate judge expressed concern that, because Heth had been on Zoloft at the time of the evaluation, the report had not dealt adequately with the issue of medication. Heth's counsel noted however, that Heth had been taken off of Zoloft before he left the BOP facility "because apparently it was not having much effect." 1/23/2008 Competency Hr'g Tr. at 7. Heth's counsel also pointed out that Dr. Nieberding

6

"actually makes a specific finding that he does not believe that psychotropic drugs would be appropriate or would help in this case." *Id*. at 7. Finally, Heth's counsel stated that "we're not going to contest the issue of competency at this time," explaining that he felt that Heth understood the proceedings and "can marginally assist me in his defense." *Id*. at 8. The magistrate judge subsequently found Heth competent to stand trial, explaining, "And I will say that although I have observed you to be somewhat difficult, that I have not seen you exhibit any behavior in the courtroom that would suggest to me that you are not capable of being competent if you choose to do so." *Id*. at 9.

## C. Guilty Plea

Heth was arraigned on January 28, 2008, and a plea of not guilty as to both counts was entered on his behalf. On February 25, 2008, Heth entered into a plea agreement under which he agreed to plead guilty to count one of the indictment, felon in possession of two firearms, and the government agreed to dismiss count two, possession of an unregistered firearm. A change-of-plea hearing was held on February 27, 2008, before a different magistrate judge. At the plea hearing, the magistrate judge first asked Heth if he understood the charge and the maximum penalty and inquired whether Heth's counsel had advised him of the possible guidelines range. Heth answered in the affirmative to these questions.

The magistrate judge then inquired about Heth's competency. In response to the magistrate judge's question whether Heth had taken any medication in the past twenty-four hours, Heth responded that he had not taken any medication but stated that he had previously taken antibiotics for an eye infection. The magistrate judge then asked Heth, "Do you believe that you are able to both hear and understand what's happening today," and Heth responded, "Yes, I do." 2/27/2008 Plea

7

Hr'g Tr. at 12. Additionally, both counsel answered, "No," when the magistrate judge asked, "Either attorney have any doubt as to the Defendant's competence to enter a plea at this time?" *Id.* The magistrate judge then informed Heth of the rights he was giving up by pleading guilty, and Heth responded in the affirmative each time he was asked whether he understood the rights discussed. When asked specifically about the plea agreement, Heth responded that he had read it before he signed it, but he answered, "Somewhat, yeah," when asked if he had discussed it with his attorney before signing. *Id.* at 16. When the magistrate judge then asked if he understood the plea agreement before he signed it, Heth again answered, "Yeah." *Id.*

The prosecutor then reviewed the terms of the plea agreement. While discussing the terms, Heth's counsel raised the possibility of a duplicative state prosecution, an issue that he stated, "Mr. Heth has consistently raised with me." *Id.* at 20. The prosecutor then assured Heth that, under Department of Justice policy, his office would pursue a prosecution only if the office has an understanding that the state would not pursue the prosecution. Heth appeared satisfied with this and stated that the prosecutor had "kept his word." *Id.* at 22. The magistrate judge also made clear to Heth that if there were any other promises made to him other than those in the agreement then Heth should raise them now, and Heth responded, "I understand." *Id.*

The magistrate judge then asked Heth questions to assure that no one had forced Heth to plead guilty:

> THE COURT: All right. Did anybody threaten you in any way or use any force or duress, or anything of that nature, to make you either sign this agreement or plead guilty today?
>
> THE DEFENDANT: No, they haven't.
>
> THE COURT: You signed this agreement at—

THE DEFENDANT: Voluntarily, yes.

*Id*. at 24-25. The magistrate judge then asked Heth to explain, in his own words, what Heth did that made him guilty of the charges. Before Heth did so, he took a moment to confer with his counsel.

Finally, the magistrate judge asked Heth about his representation and whether Heth had any other questions. Heth expressed that he was satisfied with his representation except that he did not agree with the guidelines calculated by his counsel. He then stated that he had no further questions and still wished to plead guilty. The magistrate judge then accepted the plea, finding "that Mr. Heth is competent to enter a plea of guilty at this time and that his plea is both knowledgeable and voluntary." *Id*. at 36. The magistrate judge later issued a report and recommendation to the district judge that Heth's guilty plea be accepted, and the district judge accepted the guilty plea on March 13, 2008.

## D. Sentencing

After Heth's guilty plea was entered, a Presentence Investigation Report ("PSR") was issued. The PSR determined that Heth was a career offender under U.S.S.G. § 4B1.1, increasing the criminal history category to VI. The PSR also applied two increases to the base offense level: a six-level increase for an official victim and a four-level increase for possessing a firearm in connection with another felony. With a criminal history category of VI and an offense level of 33, the PSR initially calculated Heth's guidelines range at 235 to 293 months, but this range was reduced to 120 months based on application of the statutory maximum.

Heth's counsel filed a sentencing memorandum objecting to the two increases in the base offense level but not to the application of the career-offender guidelines. Heth also filed his own objections, arguing in part that his new counsel had been ineffective and that the crime of being a

felon in possession of a firearm was not a crime of violence. At the sentencing hearing, held on June 9, 2008, Heth's counsel explained to the district court that he had incorrectly advised Heth that Heth would not be a career offender, because "those of us that do federal work, sort of adopted the mantra that we all know felon in possession is not typically a crime of violence." Sentencing Hr'g Tr. at 5. The prosecutor also had not realized that Heth would be classified as a career offender. Apparently, neither attorney had considered the commentary to U.S.S.G. § 4B1.2, which states, "'Crime of Violence' does not include the offense of unlawful possession of a firearm by a felon, *unless the possession was of a firearm described in 26 U.S.C. § 5845(a)*." U.S.S.G. § 4B1.2 cmt. n.1 (2008) (emphasis added). One of the shotguns found in Heth's vehicle was a sawed-off shotgun, which both parties agreed is a firearm described in § 5845(a).

Heth's counsel then explained to the district court that, upon learning of this mistake, he had suggested a deal with the government under which Heth would "plead to an Information that was limited to the one shotgun that was not sawed-off," but that the prosecutor "indicated he did not have authority to do that." *Id*. at 6. The prosecutor stated to the district court that the government would be prepared to go to trial if Heth withdrew his plea and that, even if the prosecutor had the authority to renegotiate the deal, he would not do so, "because we have already taken what would otherwise be a 20-year sentence and reduced it to no more than 10." *Id*. at 8. The district court asked Heth if he understood what was being said, and Heth stated that he did understand and that he had never been advised by his counsel that career-offender status would apply. The district court then spent a substantial amount of time, approximately five pages in the transcript, explaining to Heth that he had the right to move to withdraw his guilty plea rather than proceeding with sentencing. Heth stated

10

that he wanted to get on to the other objections to the sentence and, upon further questioning by the district court, stated, "I want to proceed" and "I don't want to withdraw my plea." *Id*. at 14.

The district court proceeded to sentencing and heard arguments on Heth's objections to the PSR. The district court sustained Heth's objection to the four-level increase but overruled the objection to the six-level increase. The district court therefore found that the advisory guidelines range was 151 to 188 months, reduced to 120 months after application of the statutory maximum. The district court sentenced Heth to 96 months of incarceration followed by three years of supervised release and ordered Heth to pay $9,000 in restitution and a $100 mandatory special assessment.

Heth filed a timely notice of appeal.

## II. ANALYSIS

### A. Competency

Heth argues that the district court erred in determining that Heth was competent to enter a guilty plea. We review for clear error the district court's determination of Heth's competence. *United States v. Branham*, 97 F.3d 835, 855 (6th Cir. 1996); *accord United States v. Washington*, 271 F. App'x 485, 490 (6th Cir. 2008). A defendant's competence to enter a guilty plea is measured under the same standard applicable to competence to stand trial. *Godinez v. Moran*, 509 U.S. 389, 397-98 (1993). The district court must find a defendant not competent to stand trial if "the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d). The Supreme Court has framed the standard as "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational

11

understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" *Godinez*, 509 U.S. at 396 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)); *accord Mallett v. United States*, 334 F.3d 491, 494-95 (6th Cir. 2003).

Heth appears to challenge the competency finding at two stages: (1) the initial finding of competency during the final competency hearing and (2) the finding that Heth was competent to plead guilty at the plea hearing. We address each challenge in turn.

### 1. Competency Proceedings

We cannot conclude that the magistrate judge's initial finding that Heth was competent to stand trial was clearly erroneous. Pursuant to the magistrate judge's orders, three separate competency evaluations were performed by two different psychologists. Even after the first evaluation concluded that Heth was competent, the magistrate judge, concerned about Heth's ability to assist counsel, ordered a second evaluation and heard testimony from the independent psychologist. Although both psychologists diagnosed Heth with certain mental conditions and expressed concern about Heth's ability to assist counsel due to his oppositional personality, all three reports concluded that Heth was competent to stand trial. Further, both psychologists concluded that Heth's difficult nature was caused by a personality disorder, which both agreed was under his control and did not qualify as a mental disease or defect. The magistrate judge specifically questioned Dr. Kieliszewski about Heth's difficult relationship with counsel, and Dr. Kieliszewski testified that, because Heth's "cantankerous nature" was caused by a personality disorder, Heth could "choose not to be cantankerous." 9/25/2007 Competency Hr'g Tr. at 18-19. Because Dr. Kieliszewski felt that antidepressant medication could potentially assist Heth in choosing to be less oppositional, the magistrate judge ordered a third evaluation to determine whether medication was necessary. This

12

third report, written by Dr. Nieberding, again concluded that Heth had the capacity to "assist others in a reasonable manner" if he so chooses. 1/4/2008 Forensic Report at 11. As to medication, Dr. Nieberding concluded that, though continued use of antidepressants "will help mediate the impact of his depressive symptoms," it would "likely have minimal impact on the more characterological factors that have negatively impacted his interpersonal effectiveness." *Id*.

Aside from the psychological evaluations, the magistrate judge relied on her own observations of Heth in the courtroom on at least seven separate occasions over a ten-month period. The magistrate judge specifically found that "although [she had] observed [Heth] to be somewhat difficult, [she had] not seen [Heth] exhibit any behavior in the courtroom that would suggest to [her] that [he is] not capable of being competent if [he] choose[s] to do so." 1/23/2008 Competency Hr'g Tr. at 9. Moreover, after the final evaluation, Heth's own counsel explicitly stated that he would not contest the issue of competency, "with or without medications," noting that he believed that Heth "does understand that he's been charged with a crime, he understands the roles that everybody plays, and he can marginally assist me in his defense." *Id*. at 8. Considering the conclusions of the three evaluations that Heth was competent, the statement of Heth's counsel, and the magistrate judge's own observations of Heth, the magistrate judge's finding that Heth was competent to stand trial was not clearly erroneous.

### 2. Change-of-Plea Hearing

We also conclude that the magistrate judge did not err in finding Heth competent to plead guilty. Because Heth did not object to the plea colloquy, "we review this matter only for plain error." *United States v. Denkins*, 367 F.3d 537, 545 (6th Cir. 2004). We have held that "the district court has not only the prerogative, but the duty, to inquire into a defendant's competency whenever there

13

is reasonable cause to believe that the defendant is incompetent to stand trial." *Id*. (internal quotation marks omitted).

Here, the magistrate judge did inquire into Heth's competency, asking whether "[e]ither attorney ha[d] any doubt as to the Defendant's competence to enter a plea at this time." 2/27/2008 Plea Hr'g Tr. at 12. Both the prosecutor and Heth's counsel responded, "No, your Honor." *Id*. Given this response and Heth's behavior during the hearing, we cannot conclude that the magistrate judge had "reasonable cause" to inquire further into Heth's competency. Heth had been found competent by the previous magistrate judge only one month before the change-of-plea hearing. Neither Heth nor his attorney gave any indication that Heth's competency had deteriorated since the previous hearing. A review of the transcript from the plea hearing reveals that Heth was cooperative, engaged, and understood the proceedings. Heth did not simply respond in one-word answers to the magistrate judge's questions, but often made affirmative statements and at times even interrupted the magistrate judge to confirm that he understood the proceedings. For example, when the magistrate judge asked Heth whether he had been forced to make the plea, Heth interrupted the magistrate judge's question to state that he was pleading "[v]oluntarily." *Id*. at 25. Additionally, Heth understood the proceedings well enough to be concerned about the possibility of a duplicative state prosecution and to ask his counsel to raise this issue.

Contrary to Heth's assertion, Heth's testimony that he was not currently taking medication did not indicate that he was incompetent to plead. Although medication may have helped Heth's depressive symptoms, neither psychologist concluded that Heth required medication to be competent. In fact, Dr. Nieberding concluded that antidepressant medication would likely have little impact on Heth's "interpersonal effectiveness" because Heth's difficult and cantankerous nature is "not

14

necessarily amenable to modification through the use of psychotropic medication." 1/4/2008 Forensic Report at 11. Overall, we cannot conclude that the magistrate judge committed plain error in finding that Heth was competent to plead guilty.

## B. Ineffective Assistance of Counsel

Heth also argues that he was deprived of his right to effective assistance of counsel both during the competency phase and in making his guilty plea. "'As a general rule, this Court will not review claims of ineffective assistance of counsel for the first time on direct appeal [unless] the record is adequately developed . . . .'" *United States v. Stuart*, 507 F.3d 391, 394 (6th Cir. 2007) (alteration in original) (quoting *United States v. Hall*, 200 F.3d 962, 965 (6th Cir. 2000)); *accord United States v. Watkins*, 509 F.3d 277, 283 (6th Cir. 2007). We see no reason to deviate from our usual rule in this case. In fact, a more adequately developed record would greatly assist the court in evaluating Heth's claims. For example, an affidavit from either or both of Heth's trial counsel regarding their interactions with Heth would assist in determining Heth's claim of ineffective assistance during the competency phase. Similarly, evidence about counsel's discussions with Heth regarding his guilty plea and evidence about counsel's conversations with the government about application of the career-offender guidelines would be helpful in determining whether Heth's counsel was constitutionally ineffective in advising Heth on the plea agreement. Because we do not believe that the record is adequately developed to evaluate these claims, we do not rule on Heth's claims of ineffective assistance of counsel. Heth may raise these claims in a motion filed in the district court pursuant to 28 U.S.C. § 2255.

## III. CONCLUSION

For these reasons, we **AFFIRM** Heth's conviction.